26CA0118 Peo in Interest of ST 07-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0118
El Paso County District Court No. 22JV197
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.T., a Child,

and Concerning C.W.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

---

Kenny Hodges, County Attorney, Melanie E. Gavisk, Senior County Attorney, Colorado Springs, Colorado, for Appellee

B. Kate Harvey, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    C.W. (mother) appeals the judgment terminating her parent-child legal relationship with S.T. (the child).  We affirm.

## I.    Background

¶ 2    In 2022, the El Paso County Department of Human Services filed a petition in dependency or neglect regarding the then-three-year-old child and her older sister.  The petition alleged, among other things, substance use by mother and that the older child had engaged in delinquent behavior.

¶ 3    Mother admitted the allegations of the petition, and the juvenile court adjudicated the children dependent and neglected.  The court adopted a treatment plan requiring mother to (1) complete a substance use evaluation and follow recommendations; (2) participate in life skills services; and (3) attend family time.

¶ 4    Nearly three years later, the Department moved to terminate mother's parental rights regarding S.T.  (Mother's older child, who was subject to an allocation of parental responsibilities, isn't affected by this appeal.)  Following a hearing, the juvenile court terminated mother's parental rights.

## II.    Appropriate Treatment Plan

¶ 5    Mother's sole contention on appeal is that the juvenile court erred by finding that her treatment plan was appropriate because it didn't contain a domestic violence component.  We aren't persuaded.

### A.    Applicable Law and Standard of Review

¶ 6    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 7    Except in limited circumstances not applicable here, a juvenile court must adopt an "appropriate treatment plan" for a parent following a dispositional hearing.  § 19-3-508(1)(e)(I), C.R.S. 2025; *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 15.  The treatment plan seeks to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention with the family.  *People in Interest of L.M.*, 2018 COA 57M, ¶ 25.  An

2

appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12), C.R.S. 2025; *People in Interest of K.B.*, 2016 COA 21, ¶ 13. A juvenile court has discretion in formulating a treatment plan that relates to the child's needs and is reasonably calculated to render the parent fit within a reasonable time. *People in Interest of M.W.*, 2022 COA 72, ¶ 32.

¶ 8     We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan. *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). The court may modify a treatment plan when new information or changed circumstances render a previously approved treatment plan no longer appropriate. *Z.P.S.*, ¶¶ 26-27. That a treatment plan isn't ultimately successful doesn't mean that it was inappropriate when approved by the court. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

¶ 9      Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn from the evidence fall within the juvenile court's discretion. *A.M.*, ¶ 15.

### B.     Preservation

¶ 10     The Department and GAL contend that mother didn't preserve this issue because she failed to raise any objection to, or request any modification of, her treatment plan during the pendency of the case. We need not determine whether mother adequately preserved her argument, or was required to, because even if we assume that she did, we discern no basis for reversal. *See People in Interest of A.N-B.*, 2019 COA 46, ¶ 41 (declining to resolve preservation issue where it wouldn't change the outcome).

### C.     Analysis

¶ 11     Mother argues that domestic violence treatment would have helped her achieve sobriety and that the caseworker agreed that it

would have been appropriate to include domestic violence services in her treatment plan.

¶ 12    As part of the juvenile court's termination order, the court reaffirmed its prior finding that mother's treatment plan was appropriate.  The court then found that mother didn't comply with the treatment plan and that the plan failed to rehabilitate her.  The court also found that mother raised no domestic violence concerns until two months before the termination hearing, after the termination motion had been pending for three months, and that she never moved to modify her treatment plan.  Finally, the court didn't find credible mother's testimony that she would have succeeded had the Department offered domestic violence treatment.

¶ 13    The record supports the court's findings.  True, the caseworker testified that mother wanted to add a domestic violence objective to her treatment plan and the caseworker agreed that it was appropriate.  But the caseworker testified that mother first asked for domestic violence services just two months before the termination hearing, over three years after the Department filed the petition.  The caseworker explained that the Department was "unaware of a lot of [mother's] relationship dynamics that happened

in the case" due to a lack of "communication with her." The caseworker also testified that "[u]sually if the victims of domestic violence need support . . . [the Department isn't] aware of that support unless they ask for additional support."

¶ 14　　Mother argues that "the Department presented domestic violence concerns as a reason for removal of the child from mother's care and for the filing of the petition." The petition noted mother's and father's history of domestic violence, but the Department completed a safety assessment that identified substance abuse, not domestic violence, as the reason for removal. The safety assessment noted that (1) the parents weren't "engaged in domestic violence in the home" and (2) domestic violence didn't place the child "in danger of physical or emotional harm." *See K.B.*, ¶ 12 (the safety concerns identified during the assessment form the basis for developing treatment plan objectives). At the time of its adoption, mother expressed "agreement with the treatment plan as filed" and noted that "the objectives are very reasonable." Mother requested no amendments or additions to the treatment plan when the court adopted it. *See B.C.*, 122 P.3d at 1071. She also didn't request any amendments or modifications to the treatment plan after its

6

adoption until almost three years later, two months before the termination hearing.

¶ 15 Moreover, the caseworker testified that mother didn't successfully complete any component of her treatment plan, nor did she "engage in any treatment in the three years she was out of custody during this case." The caseworker also expressed serious doubt that mother "would have engaged in domestic violence treatment" had it been offered because of her "lack of communication and cooperation with the Department."

¶ 16 Considering mother's lengthy noncompliance with the treatment plan and lack of communication with the Department, we fail to see how including additional objectives or action steps related to domestic violence would have changed the outcome of the case. *See* C.A.R. 35(c) (we may disregard any error not affecting a party's substantial rights); *People in Interest of R.J.*, 2019 COA 109, ¶ 22 (an error affects a substantial right if it can be said with fair assurance that it substantially influenced the case's outcome or impaired the basic fairness of the proceeding).

¶ 17 Accordingly, we discern no reversible error in the juvenile court's finding that mother's treatment plan was appropriate.

### III. Disposition

¶ 18     We affirm the judgment.

JUDGE PAWAR and JUDGE MEIRINK concur.